# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| KEVIN BACHHUBER, on behalf of himself and all others similarly situated, | |
| *Plaintiff,* | |
| v. | Case No. 3:25-cv-01044-wmc |
| OAKWOOD CAPITAL SOLUTIONS LLC d/b/a OAKWOOD CAPITAL GROUP, | |
| *Defendant.* | |

## <u>ANSWER WITH AFFIRMATIVE DEFENSES AND COUNTERCLAIMS</u>

Defendant Oakwood Capital Solutions LLC d/b/a Oakwood Capital Group ("Defendant") answers the Class Action Complaint as follows:

1.     Admits that Plaintiff filed this lawsuit against Defendant. Denies that Plaintiff can properly represent any person other than himself. Denies all remaining allegations in paragraph

2.     Denies the allegations in paragraph 2.

3.     Denies the allegations in paragraph 3.

4.     Denies the allegations in paragraph 4.

5.     Lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 5 and therefore denies them.

6.     Admits the allegations in paragraph 6.

7.     Admits that the Complaint purports to invoke federal question jurisdiction under 28 U.S.C. § 1331. The remaining allegations in paragraph 7 state legal conclusions to which no response is required.

8.      Admits that Plaintiff's telephone number has an area code associated with Wisconsin. The remaining allegations in paragraph 8 state legal conclusions to which no response is required. Defendant reserves all objections to personal jurisdiction.

9.      The allegations in paragraph 9 state legal conclusions to which no response is required.

10.     The allegations in paragraph 10 purport to characterize federal law and case law, which speak for themselves. No response is required.

11.     The allegations in paragraph 11 purport to characterize federal law and case law, which speak for themselves. No response is required.

12.     The allegations in paragraph 12 purport to characterize federal law, which speaks for itself. No response is required.

13.     The allegations in paragraph 13 purport to characterize federal law, which speaks for itself. No response is required.

14.     The allegations in paragraph 14 purport to characterize federal law, which speaks for itself. No response is required.

15.     The allegations in paragraph 15 purport to characterize federal law, which speaks for itself. No response is required.

16.     The allegations in paragraph 16 purport to characterize federal law, which speaks for itself. No response is required.

17.     The allegations in paragraph 17 purport to characterize federal law and case law, which speak for themselves. No response is required.

18.     The allegations in paragraph 18 purport to characterize federal law, which speaks for itself. No response is required.

19.    The allegations in paragraph 19 purport to characterize federal law, which speaks for itself. No response is required.

20.    The allegations in paragraph 20 purport to characterize federal law, which speaks for itself. No response is required.

21.    The allegations in paragraph 21 purport to characterize federal law, which speaks for itself. No response is required.

22.    Admits that Plaintiff appears to be an individual. The remaining allegations in paragraph 22 state legal conclusions to which no response is required.

23.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 23, which contains a partially redacted telephone number, and therefore denies them.

24.    Lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 24 and therefore denies them.

25.    Denies the allegations in paragraph 25. On information and belief, Plaintiff used his telephone number for business purposes, including by responding to Defendant's initial text message on December 4, 2025 by providing his business email address kevin@bachhuberconsulting.com in answer to Defendant's inquiry.

26.    Denies the allegations in paragraph 26. On information and belief, Plaintiff used his telephone number for business purposes.

27.    Denies the allegations in paragraph 27. On information and belief, Plaintiff associated his telephone number with business purposes by using it to respond to Defendant's inquiry with his business email address.

28.    Lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 28 and therefore denies them.

29.     Lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 29 and therefore denies them.

30.     Lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 30 and therefore denies them.

31.     Lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 31 and therefore denies them.

32.     Lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 32 and therefore denies them.

33.     Lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 33 and therefore denies them. The referenced screenshot speaks for itself.

34.     Lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 34 and therefore denies them.

35.     Lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 35 and therefore denies them.

36.     Lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 36 and therefore denies them.

37.     Admits that Plaintiff has not purchased goods or services from Defendant.

38.     Denies the allegations in paragraph 38. On December 4, 2025, Plaintiff voluntarily responded to Defendant's text message by providing his business email address, thereby engaging in a two-way communication with Defendant regarding Defendant's business funding services.

39.     Denies the allegations in paragraph 39. By responding to Defendant's text message from his telephone number, Plaintiff provided his telephone number to Defendant and consented to further communications.

40.     Denies the allegations in paragraph 40. On December 4, 2025, Defendant sent Plaintiff a text message stating: "Your business has been pre-selected for a term/loc as low as 9.99%. What is the best email to send out our information? Reply STOP to opt out." Plaintiff did not reply STOP. Instead, Plaintiff responded to this direct solicitation by providing his business email address kevin@bachhuberconsulting.com. By affirmatively answering Defendant's question rather than opting out, Plaintiff consented to receive further communications from Defendant.

41.     Admits that Defendant operates a website. Denies the remaining allegations in paragraph 41.

42.     Denies the allegations in paragraph 42. Defendant's website speaks for itself.

43.     Admits that the screenshots in paragraph 43 appear to be from Defendant's website.

44.     Lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 44 and therefore denies them.

45.     Admits that Defendant engages in marketing. Denies the remaining allegations in paragraph 45.

46.     Denies the allegations in paragraph 46.

47.     Denies the allegations in paragraph 47.

48.     Admits that on December 4, 2025, Defendant sent a text message to Plaintiff's telephone number from telephone number (720) 673-0574. The message instructed "Reply STOP to opt out." Plaintiff did not reply STOP. Instead, Plaintiff responded by providing his business email address. Denies the remaining allegations in paragraph 48.

49.     Admits that Defendant sent text messages to Plaintiff's telephone number on December 5, 2025, December 8, 2025, and December 9, 2025. Denies the remaining allegations in paragraph 49.

50.     The screenshot in paragraph 50 speaks for itself and reflects a follow-up communication to Plaintiff after Plaintiff provided his business email address.

51.     Denies the allegations in paragraph 51. Defendant's initial text message asked Plaintiff for the best email to send information and instructed "Reply STOP to opt out." Plaintiff did not reply STOP. Instead, Plaintiff responded by providing his business email address. By answering Defendant's question and providing his contact information, Plaintiff consented to receive further communications.

52.     Admits that Defendant's text messages were sent from telephone number (720) 673-0574. Denies the remaining allegations in paragraph 52, including any allegation that the telephone number was "spoofed" or used to conceal Defendant's identity.

53.     Denies the allegations in paragraph 53.

54.     Denies the allegations in paragraph 54.

55.     The allegations in paragraph 55 state legal conclusions to which no response is required. To the extent a response is required, Defendant denies that class treatment is appropriate and denies that the proposed class is ascertainable, as identification of class members would require individualized inquiry into whether each putative class member provided prior express consent, had an established business relationship with Defendant, used their telephone number for business purposes, or suffered any concrete injury.

56.     No response is required to paragraph 56.

57.     No response is required to paragraph 57.

58.     Denies the allegations in paragraph 58. Plaintiff cannot prove the elements of his claims on a class-wide basis because individualized inquiries are required to determine whether each putative class member provided prior express consent, had an established business relationship, used their telephone number for business purposes, or suffered any concrete injury.

59.     Denies the allegations in paragraph 59. Class members cannot be ascertained from Defendant's records alone because such records do not reflect whether each recipient provided prior express consent through their conduct, had an established business relationship, or used their telephone number for business purposes.

60.     Denies the allegations in paragraph 60. Plaintiff's speculation regarding the number of class members is unsupported. Moreover, the number of persons who received text messages is not equivalent to the number of persons with viable TCPA claims, as many recipients may have provided prior express consent or may lack standing.

61.     Denies the allegations in paragraph 61. Plaintiff's claims are not typical of the putative class because Plaintiff is subject to unique defenses that do not apply to other class members. Specifically, Plaintiff responded to Defendant's initial text message on December 4, 2025 by providing his business email address in answer to Defendant's inquiry. Plaintiff's conduct gives rise to defenses of prior express consent, established business relationship, estoppel, waiver, and unclean hands that render his claims atypical.

62.     Denies the allegations in paragraph 62. Plaintiff is not an adequate class representative because: (a) Plaintiff's interests are antagonistic to the class, as the unique defenses applicable to Plaintiff may cause him to prioritize settlement over vigorous prosecution of class claims; (b) Plaintiff's credibility is compromised by the false statements in the Complaint regarding his consent and business use of his telephone number; and (c) Plaintiff is a serial TCPA litigant who has filed at least sixteen similar lawsuits since December 2024, raising concerns that Plaintiff is a professional plaintiff whose interests diverge from those of absent class members.

63.     Denies the allegations in paragraph 63. Common questions do not predominate because resolution of this case requires individualized inquiries into: (a) whether each putative class

member provided prior express consent through their conduct; (b) whether each putative class member had an established business relationship with Defendant; (c) whether each putative class member used their telephone number for business purposes; (d) whether each putative class member suffered a concrete injury sufficient to confer Article III standing under *TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021); and (e) the amount of damages, if any, suffered by each putative class member.

64.     Denies the allegations in paragraph 64. A class action is not superior to other methods of adjudication because the individualized issues identified above would require mini-trials for each class member, defeating the efficiencies of class treatment. Moreover, the manageability problems posed by individualized consent and standing inquiries render class treatment inferior to individual adjudication.

65.     Repeats and incorporates by reference its responses to paragraphs 1 through 64 above.

66.     Denies the allegations in paragraph 66.

67.     Denies the allegations in paragraph 67.

68.     Denies that Plaintiff or any putative class member is entitled to any damages as alleged in paragraph 68.

69.     Denies that Plaintiff or any putative class member is entitled to injunctive relief as alleged in paragraph 69.

**GENERAL DENIAL** Defendant denies each and every allegation of the Complaint not specifically admitted herein.

## **AFFIRMATIVE DEFENSES**

Without assuming the burden of proof on any issue for which Plaintiff bears the burden, and without waiving any defense or objection, Defendant asserts the following affirmative defenses:

## FIRST AFFIRMATIVE DEFENSE
*(Prior Express Consent)*

Plaintiff's claims are barred because Plaintiff provided prior express consent to receive communications from Defendant. On December 4, 2025, Defendant sent an initial text message to Plaintiff's telephone number asking for the best email to send information and instructing "Reply STOP to opt out." Plaintiff did not reply STOP. Instead, Plaintiff responded by providing his business email address kevin@bachhuberconsulting.com. Under FCC precedent, a person who knowingly releases his contact information to a business has thereby given the business permission to contact him. By answering Defendant's question and providing his business contact information, Plaintiff consented to receive further communications from Defendant.

## SECOND AFFIRMATIVE DEFENSE
*(Established Business Relationship)*

Plaintiff's claims are barred because an established business relationship existed between Plaintiff and Defendant within the meaning of 47 C.F.R. § 64.1200(f)(5). On December 4, 2025, Defendant's text message asked Plaintiff for the best email to send information about business funding services. Plaintiff voluntarily responded by providing his business email address. This voluntary two-way communication constitutes an inquiry regarding Defendant's services. Defendant's subsequent text messages on December 5, 8, and 9, 2025 were sent within three months of this inquiry, and Plaintiff never terminated the relationship by replying STOP or otherwise.

## THIRD AFFIRMATIVE DEFENSE
*(Business Telephone Line)*

Plaintiff's claims under 47 C.F.R. § 64.1200(c) are barred because Plaintiff used his telephone number for business purposes. On December 4, 2025, Plaintiff responded to Defendant's initial text message by providing his business email address kevin@bachhuberconsulting.com. This conduct

demonstrates that Plaintiff was using the telephone number at issue for business purposes. The Do-Not-Call restrictions under 47 C.F.R. § 64.1200(c)(2) apply only to residential telephone subscribers, not to telephone numbers used for business purposes.

## FOURTH AFFIRMATIVE DEFENSE
### *(Failure to State a Claim)*

Plaintiff has failed to state a claim upon which relief can be granted.

## FIFTH AFFIRMATIVE DEFENSE
### *(Unclean Hands)*

Plaintiff's claims are barred by the doctrine of unclean hands. Defendant's initial text message asked Plaintiff for the best email to send information and instructed "Reply STOP to opt out." Plaintiff did not reply STOP. Instead, Plaintiff responded by providing his business email address. Having voluntarily answered Defendant's question and provided his contact information, Plaintiff cannot now claim that subsequent communications were unwanted or unlawful. Plaintiff's conduct in engaging with Defendant and then filing suit based on those very communications constitutes inequitable conduct that bars recovery.

## SIXTH AFFIRMATIVE DEFENSE
### *(Estoppel)*

Plaintiff is estopped from asserting claims under the TCPA. Defendant's initial text message asked Plaintiff for the best email to send information. Plaintiff responded by providing his business email address. Defendant reasonably relied on Plaintiff's response as consent to send the offered information and to follow up with Plaintiff. Plaintiff cannot now be permitted to assert claims based on communications that Plaintiff's own conduct invited.

## SEVENTH AFFIRMATIVE DEFENSE
### *(Waiver)*

Plaintiff waived any right to assert claims under the TCPA by voluntarily responding to Defendant's initial text message, providing his business email address in answer to Defendant's inquiry, and failing to reply "STOP" to opt out of further communications as instructed in Defendant's message.

## EIGHTH AFFIRMATIVE DEFENSE
### *(Failure to Mitigate)*

Plaintiff failed to mitigate his alleged damages. Defendant's initial text message included clear instructions to "Reply STOP to opt out." Plaintiff did not reply "STOP" or otherwise request that Defendant cease communications. Instead, Plaintiff responded by providing his business email address. Plaintiff's failure to use the readily available opt-out mechanism bars or reduces any recovery.

## NINTH AFFIRMATIVE DEFENSE
### *(Safe Harbor)*

Defendant is entitled to the safe harbor defense under 47 C.F.R. § 64.1200(c)(2)(i) because Defendant maintained procedures to comply with Do-Not-Call requirements.

## TENTH AFFIRMATIVE DEFENSE
### *(No Proximate Causation)*

Plaintiff and the putative class members are not entitled to any relief because Defendant's conduct was not the proximate cause of any alleged injury. Plaintiff invited the communications at issue by responding to Defendant's initial text message and providing his business email address.

## ELEVENTH AFFIRMATIVE DEFENSE
### *(Lack of Standing / No Concrete Injury)*

Plaintiff lacks Article III standing because Plaintiff has not suffered a concrete injury in fact. Plaintiff voluntarily responded to Defendant's initial text message by providing his business email address.

Any subsequent communications from Defendant were sent after Plaintiff engaged with Defendant's inquiry. Plaintiff cannot demonstrate a concrete, particularized injury resulting from communications that Plaintiff invited. See *TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021).

## TWELFTH AFFIRMATIVE DEFENSE
*(Insufficient Service of Process)*

Plaintiff failed to properly effectuate service of process upon Defendant pursuant to Fed. R. Civ. P. 4. The Affidavit of Service filed by Plaintiff (ECF No. 3), dated January 5, 2026 and executed by process server Jeffrey Cohen, states that on January 2, 2026 at 6:48 PM, Mr. Cohen served the Summons and Complaint on "Paul Wilson" at 5009 Avenue M, Brooklyn, NY 11234, and that Paul Wilson identified himself as a "Manager" authorized to accept service on behalf of Defendant. Defendant denies that any person named "Paul Wilson" has ever been employed by, associated with, or authorized to accept service on behalf of Defendant. Defendant further denies that any person matching the physical description provided in the Affidavit of Service (Black male, approximately 45-54 years old, approximately 5'9" to 6'0" in height, approximately 160-180 pounds, with black hair) was present at Defendant's business address on January 2, 2026 at 6:48 PM or at any other time. Service was therefore not properly effectuated.

## THIRTEENTH AFFIRMATIVE DEFENSE
*(No Subject Matter Jurisdiction)*

This Court lacks subject matter jurisdiction to the extent there is no actual case or controversy between the parties. Plaintiff voluntarily responded to Defendant's initial text message by providing his business email address, and never replied STOP or otherwise requested that Defendant cease communications. There is no genuine dispute regarding Defendant's alleged liability under the TCPA.

## FOURTEENTH AFFIRMATIVE DEFENSE
*(Class Certification Inappropriate — Individual Issues Predominate)*

This action is not appropriate for class treatment under Fed. R. Civ. P. 23 because individual issues predominate over any common questions. Defendant's affirmative defenses—including prior express consent, established business relationship, and business telephone line—require individualized inquiries that cannot be resolved on a class-wide basis. Each putative class member's consent must be evaluated based on that individual's interactions with Defendant. Whether a putative class member used their telephone number for business purposes requires individualized proof. Whether a putative class member had an established business relationship with Defendant requires individualized proof. These individualized inquiries predominate over any common questions and render class treatment inappropriate.

## FIFTEENTH AFFIRMATIVE DEFENSE
*(Inadequate Class Representative)*

Plaintiff is an inadequate class representative under Fed. R. Civ. P. 23(a)(4). Plaintiff is subject to unique defenses that render him atypical of the putative class: Plaintiff responded to Defendant's initial text message by providing his business email address, thereby consenting to further communications; Plaintiff made false statements in his Complaint regarding consent and business use; and Plaintiff is a serial TCPA litigant who has filed at least sixteen TCPA lawsuits since December 2024, raising serious questions about his motives and credibility. These unique circumstances make Plaintiff's interests antagonistic to absent class members and render him inadequate to represent the class.

## SIXTEENTH AFFIRMATIVE DEFENSE
*(Ascertainability)*

The putative class is not ascertainable. The proposed class definition requires identifying persons who (1) were on the National Do-Not-Call Registry, (2) received two or more calls from Defendant, and (3) did

not consent to those calls. Whether a person consented to receive communications cannot be determined from Defendant's records alone and requires individualized inquiry into each putative class member's interactions with Defendant. The class therefore cannot be ascertained through objective, administratively feasible means.

## SEVENTEENTH AFFIRMATIVE DEFENSE
*(Article III Standing of Absent Class Members)*

Absent class members lack Article III standing. Under TransUnion LLC v. Ramirez, 594 U.S. 413 (2021), each plaintiff must demonstrate a concrete injury to satisfy Article III. Putative class members who consented to receive communications, used their telephone numbers for business purposes, or were not actually harmed by Defendant's communications lack standing to pursue TCPA claims. Determining which putative class members have standing requires individualized inquiry that defeats class treatment.

## RESERVATION OF RIGHTS

Defendant reserves the right to assert additional affirmative defenses as may become known through discovery.

## COUNTERCLAIMS

Defendant Oakwood Capital Solutions LLC ("Counterclaim Plaintiff") brings the following Counterclaims against Kevin Bachhuber ("Counterclaim Defendant"):

## PARTIES

1.      Counterclaim Plaintiff Oakwood Capital Solutions LLC is a limited liability company organized under the laws of New York with its principal place of business at 5009 Avenue M, Brooklyn, New York 11234.

2.      Counterclaim Defendant Kevin Bachhuber is an individual who, upon information and belief, is a resident of the State of Wisconsin.

## JURISDICTION AND VENUE

3.      This Court has supplemental jurisdiction over these Counterclaims pursuant to 28 U.S.C. § 1367 because they arise out of the same case or controversy as the claims in Counterclaim Defendant's Complaint.

4.      This Court has personal jurisdiction over Counterclaim Defendant because Counterclaim Defendant filed the Complaint in this Court and thereby submitted to the jurisdiction of this Court for all purposes related to this action.

**The December 4, 2025 Text Message Exchange**

5.      On December 4, 2025 at approximately 11:25 a.m., Counterclaim Plaintiff sent a text message to Counterclaim Defendant's telephone number from telephone number (720) 673-0574. The message stated: "Your business has been pre-selected for a term/loc as low as 9.99%. What is the best email to send out our information? Reply STOP to opt out."[1]

6.      Counterclaim Defendant did not reply "STOP." Instead, Counterclaim Defendant responded to Counterclaim Plaintiff's text message by providing his business email address: kevin@bachhuberconsulting.com.

7.      By answering Counterclaim Plaintiff's question and providing his business email address, Counterclaim Defendant consented to receive further communications from Counterclaim Plaintiff.

---

[1] All times referenced in the Counterclaims are in Central Time to correspond with the times alleged in the Complaint. Counterclaim Plaintiff's carrier logs reflect times in Coordinated Universal Time (UTC). UTC is five hours ahead of Central Time during standard time. For example, 17:25 UTC corresponds to 11:25 a.m. Central Time.

8.    A screenshot of the text message exchange between Counterclaim Plaintiff and Counterclaim

Defendant is provided below:



9. Counterclaim Plaintiff's carrier records confirm the timeline of communications. As reflected in the outbound carrier log below, Counterclaim Plaintiff sent the initial text message to Counterclaim Defendant on December 4, 2025 at 17:25:17 UTC (11:25 a.m. Central Time):

```
{
    "carrier_fee": "0.00300",
    "normalized_carrier": "T-Mobile USA",
    "agent_name": "",
    "tcr_campaign_registered": "REGISTERED",
    "created_at": "2025-12-04T17:25:17Z",
    "mcc": "",
    "fteu": false,
    "10dlc_registered": true,
    "profile_name": "",                                        This is outbound
    "group_message_id": "",                                    webhook directly
    "updated_at": "2025-12-04T17:25:18Z",                      from the Carrier
    "rate": "0.00700",
    "total_media_size": "0",
    "billing_type": "",
    "on_net": false,
    "cld": "+16083454567",        ← This is his number
    "currency": "USD",
    "id": "40319aea-6595-42c4-b95b-f6cee3328b02",
    "direction": "outbound",      ← Outbound meaning we texted him
    "cli": "+17206730574",
    "mnc": "",
    "cost": "0.0070",
    "tcr_campaign_id": "CTZNC6A",
    "autoresponse_type": "",
    "message_type": "SMS",
    "product_name": "long_code",
    "record_type": "message",
    "tags": "",
    "sent_at": "2025-12-04T17:25:17Z",   ← Date and time clearly before his response
    "country_code": "US",
    "completed_at": "2025-12-04T17:25:18Z",
    "carrier": "T-MOBILE USA, INC.",
    "user_id": "",
    "delivery_status_failover_url": "",
    "profile_id": "",
    "parts": 1,
    "delivery_status_webhook_url": "",
    "source_country_code": "US",
    "errors": [],
    "delivery_status": "",
    "status": "delivered"
}
```

10. "As reflected in the inbound carrier log below, Counterclaim Defendant responded on December 4, 2025 at **17:55:34 UTC (11:55 a.m. Central Time)**—approximately 30 minutes after receiving the initial message—by providing his business email address:"

{
  "carrier_fee": "0.00300",
  "normalized_carrier": "T-Mobile USA",
  "agent_name": "",
  "tcr_campaign_registered": "REGISTERED",
  "created_at": "2025-12-04T17:55:34Z",
  "mcc": "",
  "fteu": false,
  "10dlc_registered": true,
  "profile_name": ███████████,
  "group_message_id": "",
  "updated_at": "2025-12-04T17:55:34Z",
  "rate": "0.0070",
  "total_media_size": "0",
  "billing_type": "",
  "on_net": false,
  "cld": "+17206730574",
  "currency": "USD",
  "id": "7df66e69-adc8-4994-95d6-6898130f8212",
  "direction": "inbound",          Inbound means he texted us
  "cli": "+16083454567",           His Number
  "mnc": "",
  "cost": "0.0070",
  "tcr_campaign_id": "CTZNC6A",
  "autoresponse_type": "",
  "message_type": "SMS",
  "product_name": "long_code",
  "record_type": "message",
  "tags": "",
  "sent_at": "2025-12-04T17:55:34Z",    Time he texted. Message Body isn't available but can be seen in our internal log
  "country_code": "US",
  "completed_at": "2025-12-04T17:55:34Z",
  "carrier": "T-MOBILE USA, INC.",
  "user_id": ███████████,
  "delivery_status_failover_url": ████████████████████████,
  "profile_id": "40019a92-b50c-4514-ac91-331dea1817f6",
  "parts": 1,
  "delivery_status_webhook_url": ███████████████████,
  "source_country_code": "US",
  "errors": [],
  "delivery_status": "",
  "status": "delivered"

This is the log directly from the Carrier.

11. Counterclaim Defendant did not reply "STOP" or otherwise indicate that he did not wish to receive further communications from Counterclaim Plaintiff. Instead, Counterclaim Defendant affirmatively engaged with Counterclaim Plaintiff by providing his business email address.

**The Complaint's False Statements**

12. Notwithstanding the foregoing, Counterclaim Defendant filed the Complaint in this action on December 22, 2025, containing numerous statements that Counterclaim Defendant knew to be false at the time he made them.

13. Specifically, the Complaint contains the following false statements:

a.  Paragraph 25: "Plaintiff uses his telephone number for personal, residential, and household purposes." This statement is false because Counterclaim Defendant used his telephone number to respond to Counterclaim Plaintiff's text message by providing his business email address.

b.  Paragraph 26: "Plaintiff has not used his telephone number for business purposes." This statement is false because Counterclaim Defendant used his telephone number to respond to Counterclaim Plaintiff's text message by providing his business email address.

c.  Paragraph 27: "Plaintiff has not associated his telephone number with any business." This statement is false because Counterclaim Defendant used his telephone number to provide his business email address in response to Counterclaim Plaintiff's inquiry.

d.  Paragraph 39: "Plaintiff never provided his telephone number to Defendant." This statement is false because Counterclaim Defendant provided his telephone number to Counterclaim Plaintiff by responding to Counterclaim Plaintiff's text message.

e.  Paragraph 40: "Plaintiff has never consented to receive the alleged telephone solicitations from Defendant." This statement is false because Counterclaim Defendant consented to receive communications from Counterclaim Plaintiff by responding to Counterclaim Plaintiff's initial text message and providing his business email address in answer to Counterclaim Plaintiff's inquiry.

f.  Paragraph 51: "The aforementioned telephone solicitations to Plaintiff were unwanted, nonconsensual encounters." This statement is false because Counterclaim Defendant invited the communications by responding to Counterclaim Plaintiff's initial text message and providing his business email address.

**Pattern of Serial TCPA Litigation**

14.  Counterclaim Defendant is a serial TCPA litigant who has filed at least sixteen (16) TCPA lawsuits in the Western District of Wisconsin and other federal courts since December 2024.

15.    The following is a list of TCPA cases filed by Counterclaim Defendant, as reflected in PACER records:

   i.    Bachhuber v. Alpine Funding Partners, No. 3:24-cv-00907 (W.D. Wis.) (filed Dec. 23, 2024)

   ii.    Bachhuber v. Sienna Marketing, No. 3:25-cv-00010 (W.D. Wis.) (filed Jan. 9, 2025)

   iii.    Bachhuber v. Jaydee Ventures, No. 3:25-cv-00028 (W.D. Wis.) (filed Jan. 15, 2025)

   iv.    Bachhuber v. Millennium Funding, No. 3:25-cv-00423 (W.D. Wis.) (filed May 22, 2025)

   v.    Bachhuber v. Page Operations, No. 3:25-cv-00648 (W.D. Wis.) (filed Aug. 1, 2025)

   vi.    Bachhuber v. Peach Tree Commercial, No. 4:25-cv-00214 (N.D. Ga.) (filed Aug. 4, 2025)

   vii.    Bachhuber v. Venture Debt, No. 3:25-cv-00651 (W.D. Wis.) (filed Aug. 4, 2025)

   viii.    Bachhuber v. Dealstruck Capital, No. 3:25-cv-00660 (W.D. Wis.) (filed Aug. 7, 2025)

   ix.    Bachhuber v. Ooma, No. 5:25-cv-07394 (N.D. Cal.) (filed Sept. 3, 2025)

   x.    Bachhuber v. AYTG, No. 3:25-cv-00917 (W.D. Wis.) (filed Nov. 6, 2025)

   xi.    Bachhuber v. Funding Channel, No. 3:25-cv-00959 (W.D. Wis.) (filed Nov. 20, 2025)

   xii.    Bachhuber v. EZ Advance, No. 3:25-cv-00961 (W.D. Wis.) (filed Nov. 21, 2025)

   xiii.    Bachhuber v. Ruby Capital, No. 3:25-cv-00966 (W.D. Wis.) (filed Nov. 24, 2025)

   xiv.    Bachhuber v. Olympian Partners, No. 3:25-cv-01010 (W.D. Wis.) (filed Dec. 8, 2025)

   xv.    Bachhuber v. Can I Have Money, No. 3:25-cv-01039 (W.D. Wis.) (filed Dec. 19, 2025)

   xvi.    This action (filed Dec. 22, 2025)

16.    Nearly all of the defendants in Counterclaim Defendant's TCPA lawsuits are merchant cash advance or business funding companies—the same industry as Counterclaim Plaintiff.

17.    On information and belief, Counterclaim Defendant filed for bankruptcy in Case No. 3:2023-bk-12276 in the United States Bankruptcy Court for the Western District of Wisconsin in December

2023, and received a discharge on April 4, 2024. Within eight months of his bankruptcy discharge, Counterclaim Defendant began filing serial TCPA lawsuits against business funding companies.

18.    On December 23, 2025, Counterclaim Plaintiff received an unsolicited attorney advertisement attaching the Complaint in this action. The email stated that the sender had 'resolved dozens of TCPA class action complaints across the nation filed by Paronich'—referring to Counterclaim Defendant's counsel:

 Gmail                                                          Eran Matalon <contact@theoakwoodcg.com>

**TCPA class action complaint - attorney advertisement**
8 messages

**Javidzad, Bety** <bety.javidzad@dentons.com>                                Tue, Dec 23, 2025 at 12:28
To: contact@theoakwoodcg.com <contact@theoakwoodcg.com>
Cc: hello@dream-theme.com <hello@dream-theme.com>

Dear Eran,

We caught the attached. My team and I have resolved dozens of TCPA class action complaints across the nation filed by Paronich, including in Wisconsin federal court. We are currently opposite to Paronich on several TCPA class action matters as well.

Happy to discuss further.

Best,

Bety
[Quoted text hidden]
Bachhuber_v._Oakwood_Capital_Solutions_LLC_-_Complaint.pdf

**Oakwood Capital Group** <contact@theoakwoodcg.com>                          Tue, Jan 13 at 08:22
Reply-To: <Contact@theoakwoodcg.com>
To: Javidzad, Bety <bety.javidzad@dentons.com>
Cc: hello@dream-theme.com <hello@dream-theme.com>

Hey Guys, Would you like to discuss further?

[Quoted text hidden]

**Javidzad, Bety** <bety.javidzad@dentons.com>                                Tue, Jan 13 at 10:59
To: Contact@theoakwoodcg.com <Contact@theoakwoodcg.com>
Cc: hello@dream-theme.com <hello@dream-theme.com>

Happy to schedule a call. Please let me know your availability this week.

19.  The economics of TCPA class action litigation incentivize abuse. Counterclaim Plaintiff received a quote from a law firm experienced in defending TCPA class actions requiring a minimum retainer of $25,000 and hourly rates of $925 to $1,125 per hour, as reflected below:

---

**Javidzad, Bety** <bety.javidzad@dentons.com>    Tue, Jan 13 at 14:30
To: Contact@theoakwoodcg.com <Contact@theoakwoodcg.com>

Thanks for the call, Eran. As discussed, our discounted 2026 TCPA class action rates are $1125/hour (myself) and $925/hour (Mark Silver). The firm requires a retainer of $25k.

Happy to send you our engagement agreement if you would like to move forward.

Best,

Bety

---

19.  These defense costs far exceed the statutory damages for five text messages ($2,500 to $7,500). Serial plaintiffs exploit this cost asymmetry to coerce settlements regardless of merit.

20.  Counterclaim Defendant files lawsuits in Wisconsin against out-of-state businesses like Counterclaim Plaintiff, a small New York company. This forces defendants to hire local counsel or seek pro hac vice admission. Combined with fraudulent service designed to obtain default judgments, this strategy pressures small businesses to settle rather than fight.

**False Affidavit of Service**

21.  The Affidavit of Service filed by Counterclaim Defendant (ECF No. 3), dated January 5, 2026 and executed by process server Jeffrey Cohen, claims that on January 2, 2026 at 6:48 PM, Mr. Cohen served the Summons and Complaint on "Paul Wilson" at 5009 Avenue M, Brooklyn, NY 11234, and that Paul Wilson identified himself as a "Manager" authorized to accept service on behalf of Counterclaim Plaintiff.

22.    The Affidavit of Service describes "Paul Wilson" as a Black male, approximately 45-54 years old, approximately 5'9" to 6'0" in height, approximately 160-180 pounds, with black hair.

23.    This Affidavit is false. No person named "Paul Wilson" has ever been employed by, associated with, affiliated with, or authorized to accept service on behalf of Counterclaim Plaintiff.

24.    No person matching the physical description provided in the Affidavit has ever been employed by, associated with, or affiliated with Counterclaim Plaintiff.

25.    Moreover, the alleged service could not have occurred as described. January 2, 2026 was a Friday. Counterclaim Plaintiff's owners are Shomer Shabbat (Sabbath-observant Jews), and Counterclaim Plaintiff's office was closed for the Sabbath, which began at sundown (approximately 4:35 PM). The alleged service at 6:48 PM—over two hours after sundown—occurred when the office was closed and no one was present.

26.    The process server's own photograph, attached to the Affidavit of Service (ECF No. 3), depicts a closed door and closed security gate, confirming that the premises were unoccupied at the time of alleged service. A copy of that photograph is provided below:



27.     Security camera footage from inside Counterclaim Plaintiff's office on January 2, 2026 confirms that the office was empty. No person was present at 6:48 PM or at any time that evening.

28.     As set forth above, Counterclaim Plaintiff first learned of this lawsuit on December 23, 2025—ten days before the alleged service. Counterclaim Plaintiff did not learn of this lawsuit through service of process.

### FIRST CAUSE OF ACTION
**(Abuse of Process)**
*Wisconsin Common Law*

29.     Counterclaim Plaintiff repeats and incorporates by reference the allegations in paragraphs 1 through 28 above.

30.     Under Wisconsin law, abuse of process requires: (1) a purpose other than that which the legal process was designed to accomplish; and (2) a subsequent misuse of process to obtain a collateral advantage. See *Brownsell v. Klawitter*, 102 Wis. 2d 108, 306 N.W.2d 41 (1981).

31.     Counterclaim Defendant initiated this lawsuit for a purpose other than the legitimate resolution of a TCPA dispute. The Complaint contains statements that Counterclaim Defendant knew to be false, including that he never provided his telephone number to Counterclaim Plaintiff, never consented to receive communications, and that the communications were "unwanted" and "nonconsensual."

32.     Counterclaim Defendant's pattern of filing at least sixteen TCPA lawsuits since December 2024—beginning eight months after his bankruptcy discharge—demonstrates that this litigation is designed to extract settlements, not remedy genuine injury.

33.     Counterclaim Defendant has misused legal process to obtain settlement payments that the TCPA was not designed to provide where the plaintiff consented to receive the communications.

34.     The filing of a false Affidavit of Service claiming service on a fictitious "Paul Wilson" when the office was closed and security camera footage confirms no one was present further demonstrates abuse of process.

35.     As a result of Counterclaim Defendant's abuse of process, Counterclaim Plaintiff has suffered damages, including attorneys' fees and costs.

36.     Counterclaim Plaintiff is entitled to recover compensatory damages.

## SECOND CAUSE OF ACTION
### (Fraud / Intentional Misrepresentation)
*Wisconsin Common Law*

37.     Counterclaim Plaintiff repeats and incorporates by reference the allegations in paragraphs 1 through 36 above.

38.     Under Wisconsin law, fraud requires: (1) a representation of fact; (2) that is untrue; (3) that the defendant knew was untrue; (4) made with intent to deceive; and (5) that the plaintiff relied upon and suffered damages.

39.     Counterclaim Defendant made the following false representations in the Complaint:

a.     Paragraph 25: "Plaintiff uses his telephone number for personal, residential, and household purposes."

b.     Paragraph 26: "Plaintiff has not used his telephone number for business purposes."

c.     Paragraph 27: "Plaintiff has not associated his telephone number with any business."

d.     Paragraph 39: "Plaintiff never provided his telephone number to Defendant."

e.     Paragraph 40: "Plaintiff has never consented to receive the alleged telephone solicitations from Defendant."

f.     Paragraph 51: "The aforementioned telephone solicitations to Plaintiff were unwanted, nonconsensual encounters."

40.    Each representation was false. Counterclaim Defendant responded to Counterclaim Plaintiff's text on December 4, 2025 by providing his business email address Kevin@bachhuberconsulting.com.

41.    Counterclaim Defendant knew these representations were false because he personally sent the response.

42.    Counterclaim Defendant made these false representations to deceive this Court and induce Counterclaim Plaintiff to settle.

43.    As a result, Counterclaim Plaintiff has been forced to defend this action and has suffered damages, including attorneys' fees and costs, disruption to its business operations, and stress to its owners.

### THIRD CAUSE OF ACTION
**(Bad Faith Litigation)**
*Wis. Stat. §§ 895.044 and 814.025*

44.    Counterclaim Plaintiff repeats and incorporates by reference the allegations in paragraphs 1 through 43 above.

45.    Under Wis. Stat. § 895.044(1)(a), a party may recover actual costs and reasonable attorney fees if the action was commenced, used, or continued in bad faith, solely for purposes of harassment or malicious injury. Under Wis. Stat. § 895.044(1)(b), a party may recover such costs and fees if the party or attorney knew, or should have known, that the action lacked any reasonable basis in law or equity.

46.    Counterclaim Defendant commenced this action in bad faith, solely for purposes of harassment or malicious injury. The Complaint contains statements Counterclaim Defendant knew to be false, including that he never consented to communications and that the texts were "unwanted" and "nonconsensual." These false statements demonstrate subjective bad faith.

47.    Counterclaim Defendant's pattern of filing sixteen TCPA lawsuits since December 2024—eight months after his bankruptcy discharge—demonstrates that this action was commenced for harassment and to extract settlements, not to remedy any genuine injury.

48.    Alternatively, under § 895.044(1)(b), Counterclaim Defendant and his counsel knew or should have known that this action lacked any reasonable basis in law or equity. Counterclaim Defendant's own conduct—responding to Counterclaim Plaintiff's text message and providing his business email address—defeats the essential elements of his TCPA claims. A reasonable attorney would have known these claims were baseless.

49.    The filing of a false Affidavit of Service claiming service on a fictitious "Paul Wilson" when the office was closed and unoccupied further demonstrates bad faith.

50.    Counterclaim Plaintiff is entitled to recover its actual costs and reasonable attorney fees pursuant to Wis. Stat. § 895.044(2). Pursuant to Wis. Stat. § 895.044(6), such fees may be assessed against Counterclaim Defendant, his attorneys, or both, jointly and severally or apportioned between them, in the Court's discretion.

## FOURTH CAUSE OF ACTION
### (Declaratory Judgment)
*28 U.S.C. § 2201*

51.    Counterclaim Plaintiff repeats and incorporates by reference the allegations in paragraphs 1 through 50 above.

52.    Pursuant to 28 U.S.C. § 2201, Counterclaim Plaintiff seeks a declaratory judgment that:

a.    Counterclaim Defendant provided prior express consent to receive communications from Counterclaim Plaintiff;

b.    Counterclaim Defendant used his telephone number for business purposes;

c.    Counterclaim Plaintiff did not violate the TCPA; and

      d.      Counterclaim Defendant is not entitled to any relief under the TCPA.

53.     An actual controversy exists between the parties, and a declaratory judgment will clarify the legal relations at issue.

### **PRAYER FOR RELIEF**

WHEREFORE, Defendant and Counterclaim Plaintiff Oakwood Capital Solutions LLC respectfully requests that this Court enter judgment in its favor and against Plaintiff and Counterclaim Defendant Kevin Bachhuber as follows:

1.     Dismissing the Complaint with prejudice;

2.     Denying class certification;

3.     Entering judgment in favor of Counterclaim Plaintiff on all Causes of Action;

4.     Awarding Counterclaim Plaintiff compensatory damages on the First and Second Causes of Action in an amount to be proven at trial, but not less than $250,000;

5.     Awarding Counterclaim Plaintiff punitive damages pursuant to Wis. Stat. § 895.043 in an amount not less than $500,000;

6.     Awarding Counterclaim Plaintiff its actual costs and reasonable attorney fees pursuant to Wis. Stat. § 895.044 on the Third Cause of Action;

7.     Entering a declaratory judgment in favor of Counterclaim Plaintiff on the Fourth Cause of Action declaring that Counterclaim Defendant consented to receive communications from Counterclaim Plaintiff and that Counterclaim Plaintiff did not violate the TCPA;

8.     Awarding Counterclaim Plaintiff pre-judgment and post-judgment interest at the maximum rate allowed by law;

9.     Awarding Counterclaim Plaintiff its costs of suit; and

10.    Granting such other and further relief as this Court deems just and proper.

## JURY DEMAND

Defendant and Counterclaim Plaintiff demands a trial by jury on all issues so triable.

Dated: Brooklyn, New York
        February 6, 2026

                        Respectfully submitted,

                        By: */s/Denis Vorontsov, Esq.*
                        **DENIS VORONTSOV ESQ.**
                        VORONTSOV LAW FIRM PLLC
                        1599 E. 15th St. Ste. 4.
                        Brooklyn, NY 11230
                        Tel. (212)295-5838
                        Fax (212)295-5839
                        Email: dv@vlf.law

                        *Attorney for Defendant and Counterclaim Plaintiff*
                        *Oakwood Capital Solutions LLC*


TO: All Counsel of Record via CM/ECF