**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WISCONSIN**
**AT MADISON**

| | |
|---|---|
| KEVIN BACHHUBER, on behalf of himself and all others similarly situated, | No. 3:25-cv-01044-wmc |
| Plaintiff, | Honorable District Judge William M. Conley |
| v. | Honorable Magistrate Judge Anita Marie Boor |
| OAKWOOD CAPITAL SOLUTIONS LLC d/b/a OAKWOOD CAPITAL GROUP, | |
| Defendant. | |

## JOINT RULE 26(f) PRELIMINARY PRETRIAL CONFERENCE REPORT

Plaintiff Kevin Bachhuber ("Plaintiff") and Defendant Oakwood Capital Solutions LLC d/b/a Oakwood Capital Group ("Defendant") (together with Plaintiff, the "Parties"), through their undersigned counsel, having conferred pursuant to Fed. R. Civ. P. 26(f) on February 19, 2026, submit this Joint Report pursuant to Rule 16(b) and 26(f) of the Federal Rules of Civil Procedure, this Court's Standing Order for Preliminary Pretrial Conferences, and this Court's February 9, 2026 Order, and in anticipation of the Court's Telephone Pretrial Conference set for March 5, 2026.

**A.      Concise Statement of the Nature of the Case.**

Plaintiff has brought this action under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, a federal statute enacted in response to widespread public outrage about the proliferation of intrusive, nuisance telemarketing practices. *See Mims v. Arrow Fin. Servs.*, *LLC*, 132 S. Ct. 740, 745 (2012). This is a putative class action seeking statutory damages under 47 U.S.C. § 227(c)(5) arising from Defendant's alleged telemarketing communications to Plaintiff. Defendant filed an answer and counterclaim on February 9, 2026. Dkt. 7. Plaintiff filed a motion

requesting leave to amend the complaint on February 19, 2026. Dkt. 8.While the original Complaint asserted a claim under the National Do-Not-Call regulations, 47 C.F.R. § 64.1200(c), the proposed First Amended Complaint proceeds under 47 C.F.R. § 64.1601(e), which governs telemarketing caller ID transmission requirements. The proposed amended claim focuses on Defendant's alleged failure to transmit required caller identification information, including the telemarketer's name (CNAM), when initiating telemarketing solicitations, and further explains that Plaintiff responded to Defendant's text message solely to ascertain the identity of the entity behind the solicitation and to determine who was responsible for the unsolicited communication.

**Defendant's Position:** Defendant denies Plaintiff's claims and has asserted four counterclaims: (1) abuse of process; (2) fraud and intentional misrepresentation; (3) bad faith litigation under Wis. Stat. § 895.044; and (4) declaratory judgment under 28 U.S.C. § 2201. The original Complaint asserted a claim under the National Do-Not-Call regulations, 47 C.F.R. § 64.1200(c), which required Plaintiff to establish that he was a residential subscriber who never consented to Defendant's communications. To support that theory, Plaintiff made material misrepresentations under verification, including that he never provided his telephone number to Defendant, never consented to receive communications, and had not used his telephone number for business purposes. (ECF No. 1, ¶¶ 26–27, 39–40.) In fact, Plaintiff voluntarily responded to Defendant's text message by providing his business email address and engaging in further communications. After Defendant filed its Answer and Counterclaims (ECF No. 7) — identifying the false statements and asserting claims for fraud and abuse of process — Plaintiff abandoned the Do-Not-Call theory entirely and now seeks to amend with a wholly different claim under 47 C.F.R. § 64.1601(e), a caller ID transmission regulation. The proposed First Amended Complaint deletes

the very paragraphs targeted by Defendant's fraud counterclaim. Defendant opposes the Motion to Amend and intends to file a timely opposition.

Defendant is a small business with two principals. Plaintiff is a serial TCPA litigant who has filed at least sixteen similar actions since December 2024, eight months after a Chapter 7 bankruptcy discharge. Defendant never placed a single telephone call to Plaintiff — only text messages from an SMS-only number — and identified itself by name in those messages, as Plaintiff's own screenshots confirm. Plaintiff is an inadequate class representative whose claims are subject to unique defenses that would predominate over any common questions. Defendant respectfully requests that the Court resolve the threshold deficiencies in Plaintiff's individual claim before permitting class-wide discovery into Defendant's business operations.

## B.    Any Related Cases.

None.

**Defendant's Position**: While not "related" within the meaning of Local Rule 3.01, Plaintiff has filed at least sixteen other TCPA actions since December 2024, including:

i.      Bachhuber v. Alpine Funding Partners, No. 3:24-cv-00907 (W.D. Wis.)
ii.     Bachhuber v. Sienna Marketing, No. 3:25-cv-00010 (W.D. Wis.)
iii.    Bachhuber v. Jaydee Ventures, No. 3:25-cv-00028 (W.D. Wis.)
iv.     Bachhuber v. Millennium Funding, No. 3:25-cv-00423 (W.D. Wis.)
v.      Bachhuber v. Page Operations, No. 3:25-cv-00648 (W.D. Wis.)
vi.     Bachhuber v. Peach Tree Commercial, No. 4:25-cv-00214 (N.D. Ga.)
vii.    Bachhuber v. Venture Debt, No. 3:25-cv-00651 (W.D. Wis.)
viii.   Bachhuber v. Dealstruck Capital, No. 3:25-cv-00660 (W.D. Wis.)
ix.     Bachhuber v. Ooma, No. 5:25-cv-07394 (N.D. Cal.)
x.      Bachhuber v. AYTG, No. 3:25-cv-00917 (W.D. Wis.)
xi.     Bachhuber v. Funding Channel, No. 3:25-cv-00959 (W.D. Wis.)
xii.    Bachhuber v. EZ Advance, No. 3:25-cv-00961 (W.D. Wis.)
xiii.   Bachhuber v. Ruby Capital, No. 3:25-cv-00966 (W.D. Wis.)
xiv.    Bachhuber v. Olympian Partners, No. 3:25-cv-01010 (W.D. Wis.)
xv.     Bachhuber v. Can I Have Money, No. 3:25-cv-01039 (W.D. Wis.)

These cases are relevant to Defendant's counterclaims for abuse of process and bad faith litigation, and to the Court's evaluation of Plaintiff's credibility, typicality, and adequacy as a class representative.

**C.    Concise Statement of the Material Factual and Legal Issues to be Resolved at Trial.**

The class of persons Plaintiff proposes to represent in the proposed First Amended Complaint is tentatively defined as:

> **Telemarketing Caller ID Class**: All persons within the United States to whom: (1) Defendant (or a third-party acting on behalf of Defendant) sent (2) two or more telemarketing calls or text messages in a 12-month period, (3) without the transmission of caller identification information that included either CPN or ANI and the Defendant or telemarketer's name, (4) within the four years prior to the filing of the Complaint.

The factual issues to be resolved at trial will depend in part on whether the Court grants Plaintiff leave to amend. If leave is granted, the issues will include:

a. Whether Defendant initiated one or more telemarketing calls or messages to Plaintiff and members of the proposed class.

b. Whether, in connection with those telemarketing communications, Defendant failed to transmit required caller identification information, including the name of the telemarketer (CNAM).

c. Whether accurate caller identification information was available to Defendant through its carrier at the time the communications were made.

d. Whether any such violations were willful or knowing.

e. The number of actionable communications, if any, for purposes of statutory damages.

f. The scope and composition of the proposed class.

The legal issues to be resolved at trial will depend in part on whether the Court grants Plaintiff leave to amend. If leave is granted, the issues will include:

a.  Whether the communications at issue qualify as "telemarketing" under the TCPA and its implementing regulations.

b.  Whether 47 C.F.R. § 64.1601(e) was violated by Defendant's alleged failure to transmit required caller identification information.

c.  Whether Plaintiff and the proposed class are entitled to statutory damages under 47 U.S.C. § 227(c)(5), and whether treble damages are warranted for willful or knowing violations.

d.  Whether class certification is appropriate under Rule 23.

**Defendant's Position**: The operative Complaint asserts a claim under 47 C.F.R. § 64.1200(c). The proposed class definition and issues identified by Plaintiff are based on the proposed First Amended Complaint, which has not been accepted for filing. Defendant opposes the Motion to Amend and intends to file a timely opposition.

The proposed class definition is deficient. It assumes a private right of action exists under § 64.1601(e), which is a contested threshold question. It requires individualized inquiry into whether CNAM name delivery was "available by the telemarketer's carrier" for each communication — which varies by carrier, number, and message type — defeating predominance and ascertainability. It fails to distinguish between voice calls and text messages despite the unresolved question of whether texts are actionable under § 227(c)(5). And it does not exclude persons who consented or voluntarily engaged with Defendant. Plaintiff is an inadequate class representative whose claims are subject to unique defenses including consent, fraud, and litigation misconduct.

**Defendant identifies the following issues**:

*Issues Arising from the Operative Complaint and Counterclaims (ECF Nos. 1, 7):*

a) Whether Plaintiff made material misrepresentations under verification in the original Complaint, including the false statements in ¶¶ 25–27, 39–40, and 51.

b) Whether Plaintiff consented to Defendant's communications by voluntarily responding with his business email address Kevin@bachhuberconsulting.com and failing to reply STOP.

c) Whether the Affidavit of Service (ECF No. 3) is false, including whether "Paul Wilson" exists and whether service was attempted as described.

d) Whether Plaintiff is liable on Defendant's counterclaims for abuse of process, fraud, bad faith litigation, and declaratory judgment.

e) The amount of Defendant's damages on its counterclaims, including compensatory damages, attorney fees and costs.

f) Whether Defendant is entitled to punitive damages.

*Issues Arising from the Proposed Amended Complaint, if the Court Grants Leave to Amend:*

In addition to Plaintiff's identified issues, the following threshold questions must be resolved:

*Factual:*

g) Whether Defendant placed any telephone calls to Plaintiff, or only text messages. Defendant's dialer records show zero calls to Plaintiff's number.

h) Whether Defendant's SMS-only telephone number (720) 673-0574 was "spoofed" as alleged, or is simply a texting number without voice capabilities.

i) Whether Defendant identified itself in the text messages. Plaintiff's own screenshots show messages stating "Its Joey Torro with Oakwood Capital again," and Plaintiff saved Defendant's number in his phone under a contact name referencing Oakwood.

j) Whether Plaintiff's own CNAM query returned the name of the telemarketer or merely a geographic placeholder, and whether the SMS protocol transmits CNAM data to recipients.

*Legal:*

k) Whether a private right of action exists under 47 C.F.R. § 64.1601(e).

l) Whether "telephone call" in 47 U.S.C. § 227(c)(5) includes text messages.

m) Whether Plaintiff has Article III standing given that he identified Defendant and engaged with the communications.

n) Whether the proposed class definition is ascertainable and satisfies Rule 23(a) and (b), given that the "when available by the telemarketer's carrier" element requires individualized inquiry for each communication.

o) Whether Plaintiff is an adequate class representative under Rule 23(a)(4) given his unique defenses, credibility issues, and litigation history.

p) Whether Defendant is entitled to dismissal of the §64.1601(e) claim.

## D.    A Description of Any Amendments to the Pleadings that Any Party Intends to Make.

Plaintiff filed a Motion to Amend the Complaint on February 19, 2026, which includes a description of the amendments, a copy of the proposed First Amended Complaint, and a redline version reflecting the proposed changes from the original Complaint. *See* Dkt. 8. The proposed amended claim focuses on Defendant's alleged failure to transmit required caller identification information, including the telemarketer's name (CNAM), when initiating telemarketing solicitations, and further explains that Plaintiff responded to Defendant's text message solely to ascertain the identity of the entity behind the solicitation and to determine who was responsible for the unsolicited communication.

**Defendant's Position:** Defendant opposes Plaintiff's Motion to Amend and intends to file an opposition. The proposed First Amended Complaint abandons the original Do-Not-Call theory under 47 C.F.R. § 64.1200(c) in its entirety and replaces it with a new claim under 47 C.F.R. § 64.1601(e). In doing so, the amendment deletes ¶¶ 26–27 of the original Complaint — the verified false statements that Plaintiff "has not used his telephone number for business purposes" and "has not associated his telephone number with any business" — which are the subject of Defendant's fraud and abuse of process counterclaims.

Plaintiff filed the original Complaint on December 22, 2025. Defendant filed its Answer with Counterclaims on February 6, 2026, identifying the false statements and asserting claims for fraud, abuse of process, and bad faith litigation. Eleven days later, Plaintiff moved to amend — scrapping the entire legal theory that required those false statements and substituting a novel theory that no court in this Circuit has endorsed.

If leave to amend is granted, Defendant will file a responsive pleading to the First Amended Complaint. Defendant's existing counterclaims are based on conduct independent of the legal theory asserted in the Complaint — specifically, the verified false statements in the original Complaint and the false Affidavit of Service. These counterclaims do not depend on which statutory provision Plaintiff invokes and should not be affected by any amendment. See Wis. Stat. § 802.07(5) (judgment on a counterclaim may be rendered even where the claims of the opposing party have been dismissed or otherwise disposed of). The liberal policy favoring amendments under Wis. Stat. § 802.09(1) is not absolute and must be balanced against fairness to the opposing party, including the prejudice of permitting an amendment designed to evade counterclaims predicated on fraud. See *Tietsworth v. Harley-Davidson, Inc.*, 2007 WI 97; *Coll. Ave. BP, Inc. v.*

*Arorora Invs.*, 2026 Wisc. App. LEXIS 153. Defendant reserves the right to assert additional counterclaims or defenses arising from the amended pleading. See Wis. Stat. § 802.09(4).

**E.    The Identity of Any New Parties to Be Added, Including an Explanation as to Why These Parties Must (or Should) Be Added.**

There are none at this time.

**F.    Proposed Case Schedule.**

| Event | Date |
|---|---|
| Initial Disclosures under Rule 26(a)(1) | March 5, 2026 |
| Motions to amend the pleadings and to add parties | June 24, 2026 |
| Disclosure of Experts | Plaintiff: July 10, 2026<br>Defendant: August 7, 2026 |
| Motions for class certification | September 9, 2026 |
| Opposition to class certification | October 7, 2026 |
| Reply brief in support of motion for class certification | October 28, 2026 |
| Deadlines for filing *Daubert* motions for class certification experts | Motion: November 18, 2026<br>Response: December 16, 2026<br>Reply: December 30, 2026 |
| Deadline for Filing Dispositive Motions | April 28, 2027 |
| Close of Discovery | August 25, 2027 |
| Trial | October 4, 2027 |

If this matter is certified as a class action, a trial will likely last 5-7 days. If it is not, then a trial will likely last 1-2 days.

**Defendant's Position on Schedule**: Plaintiff's proposed schedule is premised on the assumption that the Motion to Amend will be granted and that class discovery will proceed before the Court resolves threshold legal issues. Defendant objects. Dispositive motions should be resolved before class certification, not after. There is no reason to invest the resources of the parties and the Court in class certification briefing and expert discovery if the underlying claim fails as a matter of law.

Defendant proposes the following schedule:

| Event | Date |
| --- | --- |
| Plaintiff's Response to Counterclaims | March 12, 2026 |
| Initial Disclosures under Rule 26(a)(1) | 14 days after Preliminary Pretrial Conference |
| Briefing on Motion to Amend | Per Court's schedule |
| Deadline to Amend Pleadings/Add Parties | 30 days after ruling on Motion to Amend |
| Phase 1 Discovery (individual claims/counterclaims) | 120 days from ruling on Motion to Amend |
| Dispositive Motions | 60 days after close of Phase 1 discovery |
| Phase 2 Discovery, Expert Disclosures, Class Certification, and Daubert Motions | Only upon denial of dispositive motions, schedule to be set by the Court |
| Trial | Per Court's schedule |

**G.**    **Discovery Plan.**

**Matters Listed in Fed. R. Civ. P. 26(f)(3)**

    **1.**    **Rule 26(a) Initial Disclosures (Fed. R. Civ. P. 26(f)(3)(A))**

    March 5, 2026

**Defendant's Position:** Initial disclosures should be due 14 days after the Preliminary Pretrial Conference.

    **2.**    **Subjects and Completion of Discovery (Fed. R. Civ. P. 26(f)(3)(B))**

The subjects of discovery will depend in part on whether the Court grants Plaintiff leave to amend. If leave is granted, discovery will focus on Defendant's telemarketing practices and its compliance with the TCPA's caller identification transmission requirements. This includes the number, timing, and content of the telemarketing calls or messages made to Plaintiff and members of the proposed class, as well as call detail records, dialing data, and any third-party vendor involvement. Discovery will also address whether Defendant transmitted the required caller

identification information, including the telemarketer's name (CNAM), and whether accurate CNAM transmission was available through Defendant's carrier. In addition, discovery will encompass Defendant's policies, procedures, and knowledge regarding compliance with the caller ID transmission rule, including training materials and internal compliance efforts, as well as facts relevant to willfulness and statutory damages. Class-related discovery will include information necessary to identify putative class members and assess the Rule 23 requirements. Finally, discovery will also address the factual basis for Defendant's assertions in its answer, affirmative defenses, and counterclaim.

Plaintiff opposes bifurcation. Discovery relevant to commonality, typicality, and predominance under Rule 23 will necessarily overlap with the merits. As the Supreme Court has explained, class certification analysis frequently "entail[s] overlap with the merits." *Comcast Corp. v. Behrend*, 569 U.S. 27, 33–34 (2013). Likewise, certification is proper only after a "rigorous analysis," which will often require evaluation of facts that go directly to the merits. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350–51 (2011).

The party seeking bifurcation bears the burden of demonstrating that judicial economy will be served and that no party will be prejudiced. *Trentham v. Hidden Mt. Resorts, Inc.*, No. 3:08-CV-23, 2010 U.S. Dist. LEXIS 1888, at *5 (E.D. Tenn. Jan. 11, 2010). Oakwood has not met that burden. Defendant's proposed "Phase 1" is premised on resolving Plaintiff's individual claim and its counterclaim before permitting class discovery. But Plaintiff's individual claim turns on Defendant's uniform telemarketing practices—its dialing systems, CNAM transmission practices, carrier capabilities, vendor relationships, compliance procedures, and recordkeeping. This kind of overlap is what caused another Court to deny a motion to bifurcate in another TCPA case:

> The Court has reviewed the parties' joint status report [10]. The Court does not see a need to bifurcate discovery in this case. There will be some overlap in discovery here. Discovery

as to commonality and typicality under Rule 23 will also apply to the merits of the claim. Moreover, the Supreme Court in Walmart v Dukes has said the district court must conduct a rigorous analysis in determining class certification and that will often require some evaluation about facts that go to the merits of a plaintiff's underlying claims. Thus, bifurcating discovery often does not make sense as the lines between "class discovery" and "merits discovery" are significantly blurred.

*Katz v. Allied First Bank, SB*, Civil Action No. 22-cv-5277, ECF No. 14 (N.D. Ill. Jan. 3, 2023).

Other courts have agreed. *See, e.g.*, *Grippo v. Sugared + Bronzed, LLC*, No. SA CV 24-01792-AB (DFMX), 2025 WL 596095, at *2 (C.D. Cal. Feb. 24, 2025) (relying on several TCPA cases in rejecting a bifurcation of discovery holding, "the distinction between merits discovery and class discovery is not always clear, and many courts are, for this reason, reluctant to bifurcate class and merits discovery."); *Ahmed v. HSBC Bank USA, Nat'l Ass'n*, No. 15-2057, 2018 WL 501413, at *3 (C.D. Cal. Jan. 5, 2018) ("[T]he distinction between class certification and merits discovery is murky at best and impossible to determine at worst.").

As another federal court held earlier this year, while rejecting bifurcated discovery in a TCPA class action:

Because individual and class discovery overlaps, the difficulty of drawing the line between the two is likely to cause further discovery disputes and place greater demands on the Court's time. This result also implicates the third factor, judicial economy, and weighs against bifurcation.

*Nock v. PalmCo Admin., LLC*, No. 24-CV-00662-RDB, 2025 WL 100894, at *3 (D. Md. Jan. 15, 2025). Likewise, while rejecting a substantially similar bifurcation request from a TCPA class action another court in Texas wrote:

As to class certification under Rule 23, the Supreme Court has instructed that "certification is proper only if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350-351, 131 S. Ct. 2541, 180 L. Ed. 2d 374 (2011) (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161, 102 S. Ct. 2364, 72 L. Ed. 2d 740 (1982)).

And "[f]requently that 'rigorous analysis' will entail some overlap with the merits of the plaintiff's underlying claim" because "the class determination generally

involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action." *Id.* at 351 (cleaned up).

Considering *Dukes* and the "rigorous analysis" requirement for class certification, district courts have been reluctant to bifurcate class-related discovery from discovery on the merits. *See Ahmed v. HSBC Bank USA, Nat'l Ass'n*, No. EDCV152057FMOSPX, 2018 U.S. Dist. LEXIS 2286, 2018 WL 501413 (C.D. Cal. Jan. 5, 2018) (declining to bifurcate discovery in TCPA case and stating that "the distinction between class certification and merits discovery is murky at best and impossible to determine at worst"); *Chen-Oster v. Goldman, Sachs & Co.*, 285 F.R.D. 294, 300 (S.D.N.Y. 2012) (collecting cases).

In another TCPA case, *Cardenas v. Resort Sales by Spinnaker, Inc.*, No. 9:20-cv-00376-RMG, 2021 U.S. Dist. LEXIS 34923, 2021 WL 733393 (D.S.C. Feb. 24, 2021), the Court found that bifurcation would not serve the interests of judicial economy given the plaintiff's "persuasive argument that the evidence needed to determine whether [they] have a claim substantially overlaps with [their] ability to represent a class under [Rule] 23." *Cardenas*, 2021 U.S. Dist. LEXIS 34923, 2021 WL 733393, at *3.

Similarly, here, the undersigned already found that Folsom "may not avoid appropriate classwide discovery that is — as Bond persuasively argues — necessary for a future class certification motion." Dkt. No. 28. And, so, the Court agrees with Bond that bifurcation would not promote efficiency because there is considerable overlap between discovery relevant to the merits of his individual claims and issues of class certification. *Accord True Health Chiropractic, Inc. v. McKesson Corp.*, 2015 WL 273188, *2-3 (N.D. Cal. 2015) (declining to bifurcate a TCPA class action and noting that individual and class discovery claims typically overlap).

And, in light of the bulk of authority discussing the lack of a "bright line" distinction between merits and class discovery, bifurcation could lead to avoidable, future disputes over whether a particular discovery request relates to the merits or to class certification. *See Quinn v. Specialized Loan Servs., LLC*, 321 F.R.D. 324, 327-28 (N.D. Ill. 2017); *see also City of Pontiac General Employees' Retirement System v. Wal-Mart Stores, Inc.*, 2015 U.S. Dist. LEXIS 79392, 2015 WL 11120408, *1-2 (W.D. Ark. 2015) (bifurcation may force the court to resolve "endless discovery disputes"); *True* Health, 2015 U.S. Dist. LEXIS 7015, 2015 WL 273188, at *3 (finding that bifurcation "raise[s] a slew of issues as to what discovery relates to the class, as opposed to the named plaintiffs, thereby causing additional litigation regarding the distinction between the two.").

And, so, considering the binding law from *Dukes* and persuasive authority from other district courts, the Court declines to bifurcate discovery in this case.

*Bond v. Folsom Ins. Agency LLC*, No. 3:24-CV-2551-L-BN, 2025 WL 863469, at *2-3 (N.D. Tex. Mar. 19, 2025). This Court should do the same.

Because the same discovery bears simultaneously on liability and the Rule 23 requirements, bifurcation would require artificial line-drawing between so-called "individual" and "class" discovery. The evidence showing what caller identification information was transmitted, how CNAM was configured, whether accurate transmission was technically available, and what uniform procedures governed those practices applies equally to Plaintiff and the putative class. Attempting to segregate that discovery would invite motion practice over categorization, duplicate depositions and productions, and increase cost and delay rather than promote efficiency. As such, bifurcation here would not promote the "just, speedy, and inexpensive determination" of this action. Fed. R. Civ. P. 1.

Bifurcation would also prejudice Plaintiff. Prejudice includes the irretrievable loss of evidence and fading memories. *See Briscoe v. Klaus*, 538 F.3d 252, 259 (3d Cir. 2008). *See also Hartley-Culp v. Credit Mgmt. Co,* 2014 U.S. Dist. LEXIS 130308, at *9 (W.D. Pa. September 15, 2014) (denying similar request in another TCPA case after "find[ing] prejudice to Plaintiff if discovery was bifurcated" in the same manner requested here); *Saleh v. Crunch, LLC*, 2018 U.S. Dist. LEXIS 36764, at *5 (S.D. Fla. Feb. 28, 2018) (denying a stay in a TCPA case and noting that the "fading memory of any witness" is prejudicial). Here, any delay increases the risk that calling data and third-party vendor records may be lost or destroyed—data which is often dispositive in TCPA cases.

Defendant's size, solo-representation and speculation regarding purported defects in Plaintiff's claims do not justify bifurcation. This Court should instead follow the same approach it recently adopted in other TCPA actions where defendants sought bifurcated discovery and the

requests were rejected. See *Bachhuber v. Sienna Marketing & Consulting, Inc. d/b/a Creative Capital Solutions*, No. 3:25-cv-10, ECF No. 26 (Apr. 9, 2025); *Bachhuber v. Alpine Funding Partners, LLC*, No. 3:24-cv-907, ECF No. 15 (Mar. 26, 2025); *Wilson v. Fairway Independent Mortgage Corp.*, No. 3:24-cv-924, ECF No. 12 (Mar. 19, 2025). Plaintiff therefore requests that discovery proceed concurrently on both class certification and merits issues under a standard scheduling order, without bifurcation.

**Defendant's Position:** Plaintiff's proposed discovery seeks class-wide production — call detail records, dialing data, vendor agreements, compliance policies, training materials, and class member identification — before establishing that a viable individual claim or private right of action exists under the statute Plaintiff invokes. This is not proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1). Defendant is a small business with two principals, represented by a solo practitioner. Plaintiff is represented by at least two law firms with multiple attorneys and presumably a large support staff who specialize in TCPA class action litigation. The discovery Plaintiff proposes would impose the costs of complex class action litigation on a small business before any threshold legal issue has been resolved. Permitting class-wide discovery at this stage would grant Plaintiff access to Defendant's proprietary business information, customer data, and vendor relationships without first demonstrating entitlement to any relief — effectively allowing Plaintiff to use the discovery process itself as leverage to coerce a settlement.

**Defendant proposes bifurcated discovery:**

*Phase 1:* Individual Claims and Counterclaims: (a) carrier records and communications between Defendant and Plaintiff, including text messages, email correspondence, and related screenshots (much of which is already on the record at ECF Nos. 1 and 7); (b) basic information regarding the telephone number (720) 673-0574, including carrier and number type; (c) Plaintiff's deposition;

(d) deposition of process server Jeffrey Cohen regarding the Affidavit of Service; (e) documents from Plaintiff's sixteen other TCPA lawsuits, including complaints, verifications, settlement agreements, and demand letters; (f) Plaintiff's email records for kevin@bachhuberconsulting.com limited to: (i) communications with any entity that is a defendant in Plaintiff's other TCPA lawsuits; (ii) communications with any business funding, lending, or merchant cash advance company; and (iii) any email in which Plaintiff's telephone number (608) 345-4567 appears; (g) records relating to the bachhuberconsulting.com domain, including current registration and payment records; (h) Plaintiff's bankruptcy schedules and statement of financial affairs from Case No. 3:2023-bk-12276, including any disclosures of pending litigation or settlement income; (i) records from the process service company regarding the alleged service on "Paul Wilson"; and (j) Plaintiff's telephone records for (608) 345-4567 limited to any calls or text messages with business funding, lending, or merchant cash advance companies, and any calls or text messages with entities that are defendants in Plaintiff's other TCPA lawsuits.

*Phase 2: Class Discovery (if any):* Deferred until after (i) ruling on the Motion to Amend; (ii) resolution of dispositive motions; and (iii) resolution of any opposition to class certification. Class-wide discovery should not proceed until the Court determines whether Plaintiff has a viable individual claim.

**Defendant's Response to Plaintiff's Opposition to Bifurcation**: Plaintiff cites cases where defendants sought to block all discovery. Defendant is not doing that. Defendant proposes phased discovery, starting with the individual claims and counterclaims.

Plaintiff's amended claim is unlikely to survive a dispositive motion. The theory is that Defendant concealed its identity and spoofed its number. But Defendant's text messages identify "Joey Torro with Oakwood Capital" by name. Plaintiff's own screenshots prove it. The number is

not spoofed — it is an SMS-only number that traces back to Defendant. There was no concealment. Plaintiff knew who was contacting him and responded with his business email. The "investigation" theory is an after-the-fact justification that does not hold up.

Defendant's counterclaims are a different story. Plaintiff has filed sixteen TCPA lawsuits since his bankruptcy discharge. Discovery will likely show he made the same "personal use only" and "never consented" allegations in each one. But here, he responded to Defendant with his business email. If he was using this phone for business, he was probably doing the same in those cases.

There is also the service issue. The affidavit says process was served on "Paul Wilson" at 6:48 PM on Friday, January 2, 2026. No such person exists. The office was closed for the Sabbath. The process server's photo shows a locked gate. Security footage confirms no one was there.

Plaintiff relies on this Court's rulings in *Bachhuber v. Sienna Marketing*, No. 3:25-cv-10 (W.D. Wis. Apr. 9, 2025), and *Bachhuber v. Alpine Funding*, No. 3:24-cv-907 (W.D. Wis. Mar. 26, 2025). Neither case involved fraud counterclaims, a fabricated affidavit of service, or a plaintiff who abandoned his original theory after getting caught. This one does. The Supreme Court has cautioned that "the threat of discovery expense will push cost-conscious defendants to settle even anemic cases" before the merits are ever reached. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 559 (2007). That is what Plaintiff is attempting here.

Bifurcation is well-established in Wisconsin. Under Wis. Stat. §§ 803.04(2)(b) and 805.05(2), courts may order separate proceedings to promote convenience, avoid prejudice, or enhance judicial economy. The Wisconsin Supreme Court has recognized that bifurcation is appropriate where claims are distinct and involve different evidentiary considerations. See *Brethorst v. Allstate Prop. & Cas. Ins. Co*., 2011 WI 41. The Court of Appeals has held that

bifurcation is particularly relevant in bad faith cases to prevent prejudice and avoid improper discovery of sensitive materials. See *Dahmen v. Am. Family Mut. Ins. Co.*, 2001 WI App 198. This case involves counterclaims for fraud and bad faith litigation under Wis. Stat. § 895.044. Those claims are distinct from Plaintiff's TCPA theory and warrant separate treatment.

The Seventh Circuit gives district courts broad discretion to manage discovery and bifurcate claims. See *Chlopek v. Fed. Ins. Co.*, 499 F.3d 692 (7th Cir. 2007). Wisconsin courts look to federal procedural rules as persuasive authority. See *Carlson Heating, Inc. v. Onchuck*, 104 Wis. 2d 175 (1981). This Court has exercised that discretion to allow phased discovery. See *Muha v. Encore Receivable Mgmt.*, 236 F.R.D. 429 (W.D. Wis. 2006). Defendant asks the Court to do so here.

### 3. Disclosure of Discovery of ESI (Fed. R. Civ. P. 26(f)(3)(C))

The Parties intend to submit a stipulated ESI protocol encompassing these terms and any other relevant terms. Electronic documents shall be produced in the form of multi-page, color, bates-numbered PDF images together with load files. All Excel (or other electronic spreadsheet) files, PowerPoint (or other electronic slideshow) files, and photographic files, including any such files attached to emails, shall be produced in native format, if available. The following metadata shall be included in the load files to the extent the metadata is embedded in the individual electronic documents. If there are any issues with the production of these metadata fields, the parties will meet and confer and attempt to resolve them.

- DocID
- BegDocID
- EndDocID
- Document Type

- Attach DocIds

- ParentDocId

- Author

- Filename

- Date Created

- Date Modified

- Md5Hash

- DateSent

- TimeSent

- Subject

- To

- From

- CC

- BCC

- File Source Location/File Path

- Native Link

- Text Path

Non-electronic documents shall be produced as multi-page, color, bates-numbered PDF images together with load files limited to the following metadata fields: DocID, BegDocID, and EndDocID fields.

**Defendant's Position:** Defendant does not agree to the proposed ESI protocol. Plaintiff's protocol — requiring load files with twenty-one metadata fields and native format productions — is designed for large-scale complex commercial litigation and is not proportional to the needs of this

case. Implementing this protocol would require Defendant to retain an e-discovery vendor at substantial cost, which is not justified for a case involving five text messages to a single plaintiff. Defendant will produce responsive documents as Bates-numbered searchable PDFs. If the scope of discovery expands in Phase 2, the parties can revisit the ESI protocol at that time.

### 4.   Privilege (Fed. R. Civ. P. 26(f)(3)(D))

The Parties do not anticipate any unusual or unique privilege issues. The Parties agree to enter into a Confidentiality Order to govern the production of confidential information and disclosures. The Parties anticipate shortly submitting an order to that effect for the Court's review. The Parties have taken the appropriate steps to preserve discoverable information, including ESI.

**Defendant's Position on Protective Order:** Defendant requests entry of a Protective Order governing the production of confidential business information. Defendant is a small business that will be required to produce proprietary information including customer communications, carrier records, and vendor relationships. Without appropriate protections, Plaintiff could use this litigation to obtain competitive intelligence or share Defendant's business information with other plaintiffs in Plaintiff's numerous other TCPA actions. Defendant will submit a proposed Protective Order for the Court's consideration.

### 5.   Changes to Discovery (Fed. R. Civ. P. 26(f)(3)(E))

Plaintiff does not anticipate any need for changes in the limitations on discovery.

**Defendant's Position:** Defendant reserves the right to seek limitations on discovery as warranted, including limitations based on proportionality under Fed. R. Civ. P. 26(b)(1).

### 6.   Other Orders (Fed. R. Civ. P. 26(f)(3)(F))

Plaintiff seeks an order granting Plaintiff leave to amend the complaint.

**Defendant's Position**:

(1) Defendant opposes leave to amend and will file a timely opposition.

(2) Defendant opposes an open-ended extension tied to the Motion to Amend. The counterclaims were served February 6, 2026, and are based on conduct independent of whatever legal theory Plaintiff pursues. Defendant's proposed schedule provides for Plaintiff's response by March 12, 2026, which is reasonable.

(3) Defendant opposes any continuance of the March 5 conference. Proceeding as scheduled will aid the Court in entering a scheduling order that accounts for the pending motions.

**Matters listed in Magistrate Judge Boor's Standing Order**

1. **Electronically Stored Information**

    The Parties expect that most discovery will be in electronic form. To the extent any issues regarding the format for electronic discovery arise, the Parties will confer in good faith before bringing them to the attention of the Court. The Parties expect that there will be ESI relating to the text message solicitations at issue.

2. **Limitations on ESI Discovery**

    Plaintiff will be limiting ESI to the putative class period (four years from the filing of the complaint) and the records related to the calling campaign that is the subject of the putative class action.

**Defendant's Position:** Defendant does not agree that ESI should cover "the putative class period" or "the calling campaign." No class has been certified. ESI in Phase 1 should be limited to communications with Plaintiff and documents relevant to the individual claims and counterclaims.

3. **Methods of how ESI Will Be Facilitated**

    The Parties will meet and confer to discuss search terms to apply.

4. **Form in which ESI Will Be Produced**

Plaintiff respectfully refers to item G(3), above.

**Defendant's Position:** Defendant respectfully refers to its position in Section G(3) above. Defendant will produce responsive documents as Bates-numbered searchable PDFs. Defendant aims to limit the costs and burdens of extensive discovery to the actual issues in dispute.

## H.    Any Other Matter Affecting the Just, Speedy, or Inexpensive Determination of this Case, or which the Court Should Consider in Setting the Schedule.

On February 19, 2026, Plaintiff filed a Motion to Amend Complaint Under Rule 15. Dkt. 8. Plaintiff also filed an Unoppose Motion to Extension of Time to Respond to Defendant's Coutnerclaim, which was granted. Dkts. 10-11. Plaintiff does not agree to bifurcation or phased discovery, and requests that discovery proceed in its ordinary course. Plaintiff's proposed schedule takes into account that this matter is a putative class action pursuant to Fed. R. Civ. P. 23, as contemplated by the Court's Standing Order For Preliminary Pretrial Conferences With U.S. Magistrate Judge Anita Marie Boor.

**Defendant's Position:** This case was filed with a verified Complaint alleging Do-Not-Call violations under 47 C.F.R. § 64.1200(c). To support that theory, Plaintiff made material misrepresentations under verification. After Defendant exposed those false statements in its Answer and Counterclaims, Plaintiff abandoned the theory entirely and now seeks to substitute a claim under 47 C.F.R. § 64.1601(e) alleging that Defendant failed to transmit its identity — despite the fact that Defendant identified itself in the text messages, that the caller ID associated with Defendant's number displays "Oakwood," and that Plaintiff invited the communications by voluntarily providing his business email address rather than opting out as instructed.

Defendant is a small, out-of-state business with two principals, represented by a solo practitioner, defending against a serial TCPA litigant represented by multiple law firms. The just,

speedy, and inexpensive determination of this case is best served by resolving the viability of Plaintiff's individual claim before subjecting Defendant to class-wide discovery spanning a four-year period. Defendant respectfully requests:

(a) A briefing schedule for the Motion to Amend, with Defendant's opposition due within 14 days and reply within 7 days;

(b) Plaintiff to respond to Defendant's counterclaims by March 12, 2026;

(c) Phase 1 individual discovery to commence after the Court rules on the Motion to Amend;

(d) All class-wide discovery deferred until after resolution of dispositive motions; and

(e) Dispositive motions scheduled before class certification.

Plaintiff's proposed schedule places class certification seven months before dispositive motions and contemplates broad class-wide discovery from the outset. Defendant respectfully submits that discovery should be proportional to the actual issues in dispute and that threshold legal issues should be resolved first.

**Defendant's Position on Plaintiff's Initial Disclosure Demands:** Plaintiff's proposed initial disclosures and discovery requests are not designed to adjudicate Plaintiff's individual claim. They are designed to build a class action and create settlement pressure through litigation costs. Plaintiff demands call detail records for all recipients, vendor agreements, compliance policies, training materials, and class member identification before establishing that (a) a private right of action exists under § 64.1601(e); (b) Plaintiff has standing; or (c) Plaintiff's individual claim has any merit. This is backwards. Discovery should be proportional to the claims actually at issue. Defendant should not be required to produce its customer database, proprietary business information, and vendor relationships to a serial litigant who has already demonstrated a willingness to make false statements under verification simply because he filed a class action complaint.

RESPECTFULLY SUBMITTED AND DATED this 26th day of February, 2026.

/s/ Samuel J. Strauss
Samuel J. Strauss
Cassandra P. Miller
**STRAUSS BORRELLI PLLC**
One Magnificent Mile
980 N Michigan Avenue, Suite 1610
Chicago IL, 60611
Telephone: (872) 263-1100
Facsimile: (872) 263-1109
sam@straussborrelli.com
cmiller@straussborrelli.com

Anthony Paronich
**PARONICH LAW, P.C.**
350 Lincoln St., Suite 2400
Hingham, MA 02043
Telephone: (617) 485-0018
anthony@paronichlaw.com

*Attorneys for Plaintiff*

RESPECTFULLY SUBMITTED AND DATED this 26th day of February, 2026.

/s/Denis Vorontsov, Esq.
DENIS VORONTSOV ESQ.
**VORONTSOV LAW FIRM PLLC**
1599 E. 15th St. Ste. 4.
Brooklyn, NY 11230
Tel. (212)295-5838
Fax (212)295-5839
Email: dv@vlf.law

*Attorney for Defendant and Counterclaim
Plaintiff Oakwood Capital Solutions LLC*